UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CYNTHIA ADES and ABDO ADES,                    :

                        Plaintiffs,               :

                  -against-                    :     **MEMORANDUM AND ORDER**

57ᵗʰ STREET LASER COSMETICA, LLC,              :          11 Civ. 8800 (KNF)
THE BLOCH GROUP, LLC, RYAN BLOCH,
LESLIE NESBITT, JOSHUA FINK, and               :
"JOHN DOES" 1 through 10 (names presently
unknown, but intended to be the physicians     :
allegedly supervising at the co-defendants' places
of business in New York State),                :

                    Defendants.          :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

        Cynthia Ades ("Ades") and Abdo Ades commenced this action for damages arising out

of the defendants' laser treatment of Ades.  Ades alleges that, on November 3, 2011, she

underwent a laser procedure known as a photo facial and skin rejuvenation treatment to lighten

freckles and remove sunspots from her face and chest.  The treatment was performed by Leslie

Nesbitt ("Nesbitt"), who used a Cutera hand-held laser.  Ades asserts that, upon the application

of the laser to her, she developed welts, and the skin over her face and body began to bubble, she

became dizzy, nauseous and started sweating profusely.  According to Ades, as a result of the

laser treatment administered by the defendants, she sustained severe burns.  Ades has asserted

the following claims: (1) negligence and gross negligence; (2) a violation of New York

Education Law § 6512; (3) negligence per se; (4) intentional tort; (5) deceptive practices under

New York General Business Law ("GBL") § 349; (6) breach of contract; and (7) fraud in the

inducement.  Ades's spouse, Abdo Ades, has asserted a loss of consortium claim.[1]  Before the

Court are: (a) the plaintiffs' motion for summary judgment and for sanctions, "including a

default judgment, for furnishing false and fabricated evidence in discovery"; and (b) the

defendants' motion for partial summary judgment, pursuant to Rule 56 of the Federal Rules of

Civil Procedure.

### *Plaintiffs' Motion*

The plaintiffs contend that the doctrine of res ipsa loquitur should be applied and,

concomitantly, Ades should be "granted summary judgment on liability."  According to the

plaintiffs, Nesbitt's admission "that she failed to conduct a test spot on the plaintiff's skin before

applying the laser device to her, as well as the fact that she admittedly failed to follow the

protocols established for use of the laser, is sufficient to establish as a matter of law that the

occurrence complained of would not have occurred in the absence of her negligence."  The

plaintiffs contend that "the injuries occurred immediately upon exposing [Ades] to the light of

the laser.  And, had a test spot been conducted beforehand, it would have resulted in an adverse

reaction so that the use of the laser would have been immediately abandoned."  Moreover, it is

"an irrefutable fact in this case that the instrumentality causing the injury was solely in the

possession and under the exclusive control of the defendant[s]" because, at all times, Nesbitt

controlled all the settings on the laser and made calibrations pertaining to its use.  The plaintiffs

maintain that it is undisputed that: (a) Ades "walked into the defendants' offices with no burns,

welts or any skin injuries"; (b) Ades was examined by Nesbitt, who completed a chart pertaining

---

[1] Although the complaint asserts, erroneously, that the "Loss of Consortium" is "Count
IX," the plaintiffs alleged only eight claims, and "Loss of Consortium" is the last claim in the
complaint.

to Ades's history; and (c) "immediately upon the application of the laser, her skin instantly began to bubble, and welts and burns appeared and broke out all over her face and chest." According to the plaintiffs, Nesbitt's treatment notes, including "burns on face & chest," and Ades's history in the defendants' records, show that nothing else "would have caused the plaintiff to have suffered the burns she did, except for the laser" operated by Nesbitt; thus, the only reasonable inference is that the negligent operation of the laser proximately caused Ades's injuries.

The plaintiffs contend that Nesbitt "produced [,during discovery,] what appears to be an esthetics license that has been tampered with and 'fraudulently altered' in order to deceive the plaintiff and to falsely give the appearance that she is licensed by the New York State Department of Licenses."  They maintain that "[t]his fabrication of evidence is a fraud upon both this Court and upon the plaintiffs by intentional spoliation of evidence concerning an issue that is central to the truth-finding process."  According to the plaintiffs, the fabrication of evidence "is meant to impose further expenses upon the plaintiff and to obstruct all of her efforts to recover for the injuries negligently sustained at the hands of the defendants."  The plaintiffs seek judgment by default or any other sanction the Court deems appropriate.

In support of the motion, the plaintiffs submitted Ades's affidavit stating that, on "November 11, 2011," she underwent a laser procedure, "known as a photo facial and skin rejuvenation treatment to lighten freckles and remove sunspots from my face and chest," at the defendants' 57th Street Laser Cosmetica, LLC location, in Manhattan.  According to Ades, "[t]his procedure involved exposing me to a hand[-]held medical laser device applied directly to my face and chest by a laser technician," Nesbitt.  Ades states that "[a]t no time was a test spot ever performed on me, either on the day of my injury or at any time previously."  She explains that

she was unable to see what Nesbitt was doing during the treatment, because she kept her eyes closed for fear of an eye injury.  Ades maintains that she did not participate in any manner in operating the laser device Nesbitt used to perform the treatment.  She states that she felt pain and a burning sensation while Nesbitt was using the laser and asked Nesbitt to stop, but Nesbitt told her "that it was [a] natural feeling and that all will be well."  According to Ades, when Nesbitt finished, the burning sensation and pain were so intense that she became dizzy, nauseous and started to sweat profusely.  When Ades looked at the mirror in the treatment room, she observed that she was "severely burned; welts and blisters began immediately appearing and breaking out all over my face and chest."  That same day, Ades visited a dermatologist who treated her injuries.

The plaintiffs submitted exhibits in support of their motion, including: (1) Exhibit No. 1, the complaint in this action; (2) Exhibit No. 2, the defendants' answer; (3) Exhibit No. 3, the esthetics license produced by the defendants during discovery; (4) Exhibit No. 4, a portion of Nesbitt's deposition transcript; (5) Exhibit No. 5, a certification by the New York Department of State concerning Nesbitt's license; (6) Exhibit No. 6, an e-mail message, dated February 6, 2013, from Whitney A. Clark, an associate attorney, Office of Counsel for the New York State Department of State, to the plaintiffs' attorney; (7) Exhibit No. 7, Nesbitt's curriculum vitae; (8) Exhibit No. 8, a portion of the manufacturer's treatment guidelines for the use of the Cutera laser device; (9) Exhibit No. 9, a portion of 57th Street Laser Cosmetica, LLC's treatment guidelines for the use of the Cutera laser device; (10) Exhibit No. 10, a portion of Nesbitt's deposition transcript; (11) Exhibit No. 11, the defendants' history, evaluation and treatment notes concerning Ades; (12) Exhibit No. 12, Nesbitt's treatment notes; (13) Exhibit No. 13, a portion of Joshua Fink, M.D.'s ("Fink") deposition transcript; (14) Exhibit No. 14, a decision issued by

administrative law judge Robert Schneir, of the New York Department of State, dated January 28, 2010; and (15) Exhibit No. 15, a portion of Ryan Bloch's ("Bloch") deposition transcript. The plaintiffs also submitted their statement, pursuant to Local Civil Rule 56.1 of this court.

### Defendants' Opposition to the Plaintiffs' Motion

The defendants contend that Ades failed to establish that the res ipsa loquitur doctrine applies. They maintain that "Fink testified that multiple factors would go into the assessment of why a person would sustain the burns as reflected in the photos produced by plaintiff's counsel," including the person's history, "how the IPL [intense pulse light] was applied" and "why it was done." Moreover, the manual for the laser device "provided it was a guideline," and Ades "was exposed on atleast [sic] one prior occasion at the same or higher settings." The defendants contend that "Fink testified that one need not do a test spot each and every time the IPL is used," and Ades "offered no expert proof to support the contention that the injury in question was as [sic] a result of the negligent application of the IPL device, "or that "the departure of not doing a test spot on November 11th, despite the fact that use of the IPL at the same or higher settings was without complaint in May 2011 and that failure to do [a] test site in November . . . was a substantial factor in bringing about the injuries." The defendants assert that the plaintiffs' citation to an administrative proceeding is "objectionable and insufficient as hearsay" and not binding. They contend that the "issue of Ms. Nesbitt's licensure, if such issue is ultimately not resolved in Ms. Nesbitt's favor prior to the time of trial, as a violation of an administrative regulation promulgated pursuant to statute is simply some evidence of negligence." The defendants assert that the plaintiffs "failed to address the issue of piercing the veil to establish liability" with respect to Bloch Group, LLC or Block.

The defendants contend that the plaintiffs' request for sanctions should be denied,

5

because the "defendants complied with plaintiffs' demands subject to objections under cover of June 29, 2012," and "provided additional discovery on January 14, 2013."  Moreover, the plaintiffs' counsel "had the opportunity to question all witnesses," including Nesbitt.  "The only issue raised is as to the credibility of defendant Nesbitt, and plaintiff confronted her at deposition."  According to the defendants, the plaintiffs make no claim against any other defendant that would warrant preclusion of his or her testimony.

In support of their opposition, the defendants submitted an affirmation by their attorney,[2] with exhibits, which are either not identified or identified improperly by the attorney's affirmation: (i) Exhibit A, a portion of Ades's deposition transcript; (ii) Exhibit B, a portion of Nesbitt's deposition transcript; (iii) Exhibit C, a document entitled "Informed Consent," dated May 4, 2011; (iv) Exhibit D, Bloch's deposition transcript; (v) Exhibit E, Fink's deposition transcript; and (vi) Exhibit F, letters from the defendants' attorney to the plaintiff's attorney, dated June 28 and September 24, 2012.  The defendants did not submit a statement, pursuant to Local Civil Rule 56.1 of this court.

### *Plaintiffs' Reply*

In reply, the plaintiffs submitted their attorney's affirmation, contending: (a) "the defendants' acts are tantamount to the deliberate obstruction of justice"; (b) "the entire

---

[2] The affirmation of the defendants' attorney, submitted in opposition to the plaintiffs' motion, contains statements such as "there is no claim that there was any incident with regard to the fotofacial session performed at 57th STREET LASER COSMETICA on May 3, 2011" (¶ 8) and the plaintiff "learned from her friend Sarah simply that she found a 'good deal.' (Deposition of plaintiff annexed hereto as Exhibit 'A' at page 18)" (¶ 14).  Although some of the statements in the affirmation of the defendants' attorney contain citations to certain documents, the affirmation is not a proper vehicle for complying with Local Civil Rule 56.1.  Moreover, most statements made in the affirmation are matters about which the defendants' attorney has no personal knowledge and, as a consequence, those statements should not be included in the affirmation.

test[i]mony of the defendant Nesbitt should be stricken"; (c) "the defendants' acts justify a claim

for punitive damages"; and (d) "the defendants are grasping at straws by speculating that

plaintiff's injuries could have been caused by anything other than their own negligence."

### Defendants' Motion

By their notice of motion, the defendants seek an order: (1) "[d]ismissing the First Count"

against Bloch, the Bloch Group, LLC and Fink; (2) "[d]ismissing Counts II, III, IV, and VI on

behalf of all defendants"; (3) dismissing "Count VII" against Bloch and the Bloch Group, LLC; (4)

"[d]ismissing Count VIII"[3] against Fink; (5) "[d]ismissing Count IX" against the Bloch Group,

LLC, Bloch and Fink; and (6)  "[g]ranting summary judgment on the basis of the release."  The

defendants contend that the claims against Fink should be dismissed because, in an action

"sounding in medical malpractice," a  plaintiff must establish that the defendant deviated from the

accepted standard of medical practice and the deviation was the proximate cause of the alleged

injury.  According to the defendants, the plaintiff offered no "indicia of the forming of a

physician/patient relationship such as to support any allegation of negligence vis-à-vis Dr. Fink."

The defendants contend that, since it is undisputed that Fink was not in the room when services

were rendered to the plaintiff, and no proof exists that he directed or caused any advertisement

identifying himself in connection with the services, no basis exists for any claims against Fink.  The

defendants assert that the plaintiffs failed to establish a claim for practicing medicine without a

license because the services rendered do not constitute the practice of medicine and are close to the

practice of "esthetics" within the meaning of GBL § 400(6).

---

[3] Although the defendants seek dismissal of "Count VIII," no "Count VIII" is asserted in
the complaint, and it is not clear whether, by seeking dismissal of "Count VIII," the defendants
seek dismissal of the last claim in the complaint, which is the eighth claim, although erroneously
styled  "Count IX."

The defendants maintain that the plaintiff also failed to establish an intentional tort claim because "there is a claim for negligent application of fotofacial services" and no showing of "intent to cause injury to plaintiff" on the part of Nesbitt.  Furthermore, the plaintiff failed to establish breach of contract because no privity is shown to exist among Ades and Fink, Bloch and Bloch Group, LLC, and the breach of contract cannot lie where "the gravamen of the claim is negligence in rendering the services" and Ades executed an informed consent document.  According to the defendants, Ades also failed to establish the deceptive acts and deceptive trade practices claims because she "can point to no injury as a result of any misrepresentation on the part of Bloch, Fink, or the like."  Moreover, Ades did not support her claim for punitive damages, and "Count I should be dismissed" because "[i]t is well settled law that exculpatory language is sufficient."

In support of the motion, the defendants submitted an affirmation by their attorney with exhibits and their Local Civil Rule 56.1 statement.  The defendants' exhibits include: (a) Exhibit A, the complaint in this action; (b) Exhibit B, the answer; (c) Exhibit C, Ades' deposition transcript; (d) Exhibit D, Fink's deposition transcript; (e) Exhibit E, Bloch's deposition transcript; and (f) Exhibit F, the records of 57th Street Laser Cosmetica, LLC pertaining to Ades.

### Plaintiffs' Opposition to the Defendants' Motion

The plaintiffs contend that Nesbitt's employer is liable "for her torts under the doctrine of respondeat superior," because Nesbitt's acts "unquestionably fit the standards enunciated by the Courts is [sic] assessing vicarious liability that are binding upon the employer."  According to the plaintiffs, Bloch "acknowledged having had prior notice of the numerous lawsuits stemming from laser burn injuries sustained by defendants' clients," but permitted "Nesbitt to operate a dangerous instrumentality" without a license and training.  The plaintiffs maintain that Ades's consent is "insufficient to vitiate [the defendants'] negligent conduct," because "[t]he signing of an informed

consent form is not a defense to negligence."   The plaintiffs maintain that the defendants

"knowingly enabl[ed] Leslie Nesbitt and plac[ed] her in a position to operate a dangerous

instrumentality, . . . despite the fact that her defendant-employer had actual knowledge of her lack

of a license, her lack of training, and her lack of skill and the necessary credentials to operate that

device."   Furthermore, the "defendants' payment records for the services rendered by Joshua Fink

indicate that he is being paid for '*supervisiorm*' services," and his name is listed in the materials

distributed in the defendants' offices.   According to the plaintiffs, "the infliction of injury by one

who is unlicensed is either evidence of negligence or negligence per se to be submitted to the finder

of the facts."   The plaintiffs maintain that awarding punitive damages is warranted because the

defendants employed "knowingly [an] unlicensed and untrained individual in whose hands [they

chose] to place a most dangerous instrumentality, . . . subjecting the public to their procedures

without any warning or notification whatsoever of its employee's lack of qualifications and

credentials."

  In support of their opposition to the motion, the plaintiffs submitted Ades's affidavit and

their attorney's affirmation with: (i) Exhibit No. 16, "defendant's ledger sheet of payments made to

Joshua Fink, M.D."; (ii) Exhibit No. 17, "the records of Alyson Penstein, M.D., including those for

emergency treatment rendered to plaintiff on November 3, 2011, the day of her injury"; (iii) Exhibit

No. 18, "one of defendants' advertisements indicating Dr. Joshua Fink as one of 'Our Supervisors'

and one of 'Our Consultants'"; (iv) Exhibit No. 19, a Notice to Admit served by the plaintiffs on

Nesbitt; (v) Exhibit 20, "one of the defendants' many internet advertisements"; and (vi) Exhibit No.

21, Nesbitt's deposition testimony.

### ***Defendants' Reply***

  The defendants contend that the "plaintiff may not raise issues in [an] affidavit in

opposition to [the] summary judgment motion not raised at deposition."  According to the defendants, in her deposition testimony, Ades "denied speaking to a physician at any time, denied ever speaking with Dr. Fink and ultimately denied hearing Dr. Fink's name until November 3, 2011 and denied asking to speak with a physician between May 3, 2011 and November 3, 2011." Furthermore, Ades "denied reviewing any literature prior to starting with 57th STREET LASER COSMETICA, LLC or relying upon any pamphlets that she may have seen in the office."  While Ades "testified that she saw pamphlets of doctors in the waiting area, she could neither identify the doctors referred to therein or [sic] otherwise describe those pamphlets."  The defendants assert that Ades's statement, in her affidavit, "that she asked to speak with a physician on subsequent occasions" is contradicted by her deposition testimony.  They maintain that the plaintiffs "improperly cite the standard for cosmetology as applicable to esthetics," in connection with the allegation that Nesbitt lacked the requisite training.  The defendants assert that the record is devoid of any proof of willful misconduct on their part, Ades's gross negligence claim must fail and her allegations regarding the improper use of the equipment by Nesbitt are speculative and conclusory. Furthermore, Ades failed to advance any case against Fink, and she did not establish that punitive damages are warranted, since "[t]he issue with regard to the [Nesbitt's] license creates an issue of fact with regard to her credentials."  The defendants also submitted their attorney's affirmation, in which the attorney makes legal arguments.

***Legal Standard***

## Summary Judgment

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 (a).  A fact is "material" if it "might affect the outcome of the suit under the

10

governing law." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

A "dispute about a material fact is 'genuine,' . . . if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party."  <u>Id.</u>

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

> Fed. R. Civ. P. 56(c)(1).

In determining whether a genuine issue as to any material fact exists, a "district court is required to

resolve all ambiguities and draw all factual inferences in favor of the party against whom summary

judgment is sought."  <u>St. Pierre v. Dyer</u>, 208 F.3d 394, 404 (2d Cir. 2000).  Additionally, "the court

is not entitled to weigh the evidence" and "if there is any evidence in the record from any source

from which a reasonable inference could be drawn in favor of the nonmoving party, summary

judgment is improper."  <u>Id.</u>

> The Local Civil Rules of this court require that,

> (a) [u]pon any motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be annexed to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried.  Failure to submit such a statement may constitute grounds for denial of the motion. (b) The papers opposing a motion for summary judgment shall include a correspondingly numbered paragraph responding to each numbered paragraph in the statement of the moving party, and if necessary, additional paragraphs containing a separate, short and concise statement of additional material facts as to which it is contended that there exists a genuine issue to be tried. (c) Each numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party. (d)  Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each

statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c).

Local Civil Rule 56.1

## Negligence

"To establish a cause of action sounding in negligence, a plaintiff must establish the existence of a duty on defendant's part to plaintiff, breach of the duty and damages." Greenberg, Trager & Herbst, LLP v. HSBC Bank USA, 17 N.Y.3d 565, 576, 934 N.Y.S.2d 43, 48 (2011). "To establish a prima facie case of proximate cause, a plaintiff must show 'that the defendant's negligence was a substantial cause of the events which produced the injury.'" Maheshwari v. City of New York, 2 N.Y.3d 288, 295, 778 N.Y.S.2d 442, 446 (2004) (quoting Derdiarian v. Felix Contr. Corp., 51 N.Y.2d 308, 315, 434 N.Y.S.2d 166, 169 (1980)).

> Once a plaintiff's proof establishes the following three conditions, a prima facie case of negligence exists and plaintiff is entitled to have res ipsa loquitur charged to the jury. First, the event must be of a kind that ordinarily does not occur in the absence of someone's negligence; second, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and third, it must not have been due to any voluntary action or contribution on the part of the plaintiff. To rely on res ipsa loquitur a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that "it is more likely than not" that the injury was caused by defendant's negligence.

> Kambat v. St. Francis Hosp., 89 N.Y.2d 489, 494, 655 N.Y.S.2d 844, 846 (1997) (citations omitted).

> The rule of res ipsa loquitur permits an inference of negligence to be drawn if the instrumentality causing the injury to the plaintiff was in the "exclusive possession and control of the person charged with negligence * * * and * * * the accident would not ordinarily have occurred without neglect of some duty owed to the plaintiff." . . . [I]t would be impermissible to rely on res ipsa if the proof adduced by the plaintiff actually refutes or negates the inference which might otherwise have been drawn from application of that doctrine. . . . The res ipsa case differs from the conventional case in one respect only—that, among all the possible causes of the injury, those which point to the defendant's negligence are so probable, in view of the circumstances of the

accident, and those which would exonerate him are so improbable, that it is *unnecessary to specify* the one that actually led to the occurrence.

Abbott v. Page Airways, Inc., 23 N.Y.2d 502, 510-13, 297 N.Y.S.2d 713, 718-21 (1969) (internal citations omitted).

[T]he summary judgment . . . issue may . . . be properly approached by simply evaluating the circumstantial evidence.  If that evidence presents a question of fact as to the defendant's liability under the *Kambat/ Corcoran* test for res ipsa loquitur, the case should go to trial.  If the circumstantial evidence does not reach that level and present a question of fact, the defendant will prevail on the law.  Alternatively, . . . the plaintiff should win summary judgment . . . in the exceptional case in which no facts are left for determination.

Morejon v. Rais Constr. Co., 7 N.Y.3d 203, 212, 818 N.Y.S.2d 792, 798 (2006).

"As a rule, violation of a State statute that imposes a specific duty constitutes negligence per se, or may even create absolute liability."  Elliott v. City of New York, 95 N.Y.2d 730, 734, 724 N.Y.S.2d 397, 399 (2001) (citation omitted).  "If the defendant's negligence consists in the violation of a statute enacted to protect a class of persons from their inability to exercise self-protective care, a member of such class is not barred by his contributory negligence from recovery for bodily harm caused by the violation of such statute."  Van Gaasbeck v. Webatuck Cent. Sch. Dist. No. 1, 21 N.Y.2d 239, 244, 287 N.Y.S.2d 77, 80-81 (1967) (citation omitted).

**Sanctions**

"[A] federal court . . . may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"  Ransmeier v. Mariani, __ F.3d __, 2013 WL 1981939, at *2 (2d Cir. 2013) (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S. Ct. 2123, 2133 (1991)).  To obtain sanctions based on fraud, "it must be established by clear and convincing evidence that the [party committing the fraud] has 'sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate' the action."  Scholastic, Inc. Stouffer, 221 F. Supp. 2d 425, 439 (S.D.N.Y.

13

2002) (citation omitted).  "The essence of fraud on the court is 'when a party lies to the court and

his adversary intentionally, repeatedly, and about issues that are central to the truth-finding

process.'" Passlogix, Inc. v. 2FA Tech., LLC, 708 F. Supp. 2d 378, 393 (S.D.N.Y. 2010) (quoting

McMunn v. Mem'l Sloan-Kettering Cancer Ctr., 191 F. Supp. 2d 440, 445 (S.D.N.Y. 2002)).

> Spoliation is the destruction or significant alteration of evidence, or the failure to
> preserve property for another's use as evidence in pending or reasonably foreseeable
> litigation.  . . . [A] district court may impose sanctions for spoliation, exercising its
> inherent power to control litigation. . . . Although a district court has broad discretion
> in crafting a proper sanction for spoliation, . . . the applicable sanction should be
> modeled to serve the prophylactic, punitive, and remedial rationales underlying the
> spoliation doctrine.  The sanction should be designed to: (1) deter parties from engaging
> in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully
> created the risk; and (3) restore the prejudiced party to the same position he would have
> been in absent the wrongful destruction of evidence by the opposing party.  Outright
> dismissal of a lawsuit . . . is within the court's discretion.  Dismissal is appropriate if
> there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party.
> However, because dismissal is a drastic remedy, it should be imposed only in extreme
> circumstances, usually after consideration of alternative, less drastic sanctions.

> West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999) (quotation
> marks and citations omitted).

### *Undisputed Facts*

One day in November 2011,[4] Ades presented at 57th Street Laser Cosmetica, LLC for a

---

[4] While the plaintiffs' motion alleges and their Exhibit No. 12 in support of the plaintiffs'
motion, which they contend consists of Nesbitt's "treatment notes made on the day of the injury
complained of," suggests that Ades underwent the treatment at issue on November 3, 2011, Ades
states, repeatedly, in her affidavit and memorandum of law, in support of her motion, that she
underwent the treatment on November 11, 2011. However, Ades states, in her affidavit in
opposition to the defendants' motion, that "the emergency situation arose on November 3,
2011," when she was "severely burned."  The defendants contend, in their memorandum of law
in opposition to the plaintiff's motion: "Plaintiff offers opinion as to the departure of not doing a
test spot on November 11th," despite the fact that use of the IPL at the same or higher settings
was without complaint in May of 2011 . . . ."  The defendants's attorney's affirmation, in opposition
to the plaintiff's motion, states: "[I]t is not disputed that the only claim relates to the session
involving Ms. Nesbitt on November 3, 2011."  Thus, the exact date of the treatment, in
November 2011,  appears to be disputed.

photo facial and skin rejuvenation treatment to lighten freckles and remove sunspots from her face

and chest.  Nesbitt administered the treatment, using a Cutera LP560 Pulse Light Handpiece laser

device on Ades.  The manufacturer of the laser devise used on Ades recommends, in its "LP560

Solar Lentigines and Diffuse Redness Treatment Guidelines," that "[t]reatment of a test area should

be performed and observed for the desired response and signs of unwanted side effects."  The

"photo-rejuvenation treatment guidelines" for using the LP560 Pulsed Light Handpiece, published

by 57th Street Laser Cosmetica, LLC, also recommend the treatment of a test area "be performed

and observed after 20 minutes or more prior to the treatment of a larger area," to assess the

response.  No treatment of a test area was performed on Ades at any time.

   Ades did not participate in calibrating or handling the laser device used on her.  During the

treatment, Ades started feeling pain and had a burning sensation.  She asked Nesbitt to stop the

treatment but Nesbitt continued, explaining that it was a natural feeling and all would be well.

When the treatment was finished, Ades had a burning sensation and intense pain, became dizzy,

nauseous and started to sweat profusely.  Welts and blisters began appearing and breaking out all

over her face and chest.  Nesbitt recorded, in a report she completed subsequently, that Ades

sustained burns on her face and chest.  The office manager took photographs of Ades to send them

to Fink.  Ades was offered the opportunity to be taken to see Fink at his office in Westchester, but

she determined to see a dermatologist in Manhattan, who treated her the same day.

   On August 2, 2007, the New York Department of State issued a temporary esthetics license

to Nesbitt, which expired on February 2, 2008.  The temporary license issued to Nesbitt on August

2, 2007 has not been renewed and Nesbitt did not obtain a permanent New York esthetics license.

At the time Nesbitt performed the photo facial and skin rejuvenation treatment on Ades, she did not

possess a valid New York Department of State esthetics license.  During discovery in this litigation,

the defendants produced to the plaintiffs a document, purporting to be the New York Department of

State, Division of Licensing Services, esthetics license issued to Nesbitt, with an effective date of

August 2, 2007, and an expiration date of August 2, 2014.  On January 15, 2013, Nesbitt testified at

her deposition as follows:

> Q.     Did you ever apply for an aesthetician's license for New York State?
> A.     Yes.
> Q.     Did you receive one?
> A.     Yes.
> Q.     And your attorney just produced a copy of a license effective as of 2007 to
>        2014.  Can I show you this?
> A.     Yes.
> Q.     Is that the license you presently hold?
> A.     Yes.

The New York Department of State did not issue in 2007 and does not now issue seven-year

esthetics licenses.

### *Application of Legal Standard*

### *Plaintiffs' Motion*

#### <u>Summary Judgment on Negligence Claim</u>

Although the plaintiffs' notice of motion does do not so indicate, the plaintiffs seek partial

summary judgment.  That is clear because the only ground the plaintiffs advance for that part of

their motion seeking summary judgment, is that the doctrine of res ipsa loquitur warrants the Court

in granting a judgment on Ades's negligence claim, as a matter of law.  The plaintiffs contend that

the first element of the res ipsa loquitur doctrine, namely that the event must be of a kind that

ordinarily does not occur in the absence of someone's negligence, is satisfied by the following

facts: (a) Nesbitt failed to conduct a test spot on Ades's skin before applying the laser device to her;

and (b) Nesbitt failed to follow the protocols established for using the laser.  However, these two

undisputed facts do not support the first element of the res ipsa loquitur doctrine, i.e. that, absent Nesbitt's failure to follow the guidelines for using the laser, which recommend conducting a test spot, Ades would not have sustained burns.  That is because the evidence demonstrates that the manufacturer's and the defendants' guidelines only recommend and do not mandate conducting a test spot.  Nesbitt's failure to conduct a test spot raises factual questions, such as whether the recommended guidelines are followed, if at all, by other providers of the same services generally, and by the defendants specifically, and what, if any, are the results of failing to follow the guidelines.  A reasonable inference can be drawn in favor of the defendants from the fact that the guidelines are only recommendations, since that fact would suggest an absence of a duty on the part of the defendants to follow them, which precludes summary judgment on the negligence claim, based on the res ipsa loquitur doctrine.

Moreover, the undisputed evidence establishes that, at the time Nesbitt performed the treatment on Ades, she was not in possession of a valid esthetics license issued by the New York Department of State.  See Pls.' Ex. Nos. 6 & 7; GBL § 414 ("The official acts of the secretary and department shall be prima facie evidence of the facts therein and shall be entitled to be received as evidence on all actions at law and other legal proceedings in any court or before any board, body or officer."); GBL § 401 ("No person shall engage in the practice of . . . esthetics or cosmetology as defined in section four hundred of this article, without having received a license to engage in such practice in the manner prescribed in this article."); GBL § 412 ("The practice of . . . esthetics or cosmetology . . . without a license or while under suspension or revocation, . . . is a violation and is subject to a civil penalty . . . .").  Thus, evidence exists tending to show either negligence per se or absolute liability, see Van Gaasbeck, 21 N.Y.2d at 243-44, 287 N.Y.S.2d at 80-81, which would make the res ipsa loquitur doctrine inapplicable.  However, the plaintiffs did not make a motion for

summary judgment on any ground other than the res ipsa loquitur doctrine.  Since evidence exists raising genuine issues of material fact and from which a reasonable inference could be drawn in the defendants' favor, summary judgment on Ades's negligence claim, based on the res ipsa loquitur doctrine, is not warranted.

### Sanctions

The New York Department of State issued Nesbitt a temporary esthetics license for six months, on August 2, 2007, which was in effect until it expired automatically, on February 2, 2008. See Pls.' Exhibit No. 5.  As of February 6, 2013, the temporary license issued on August 2, 2007 had not been renewed and no permanent license had been obtained by Nesbitt.  See Pls.' Exhibit No. 6.  During discovery in this action, the defendants produced to the plaintiffs a document, see Pls.' Exhibit No. 3, purporting to be the New York Department of State, Division of Licensing Services license to practice esthetics issued to Nesbitt, with an effective date of August 2, 2007, and an expiration date of February 2, 2014.  On January 15, 2013, Nesbitt testified at her deposition that, at that time, she held a New York esthetician's license, effective "as of 2007 to 2014."  See Pls.' Exhibit No. 4.

It is undisputed that: (a) at the time Nesbitt performed the treatment at issue on Ades, she did not possess a valid license to practice esthetics issued by the New York Department of State; (b) the document produced by the defendants to the plaintiffs during discovery, Pls.' Exhibit 3, purporting to be Nesbitt's esthetics license with an effective date of August 2, 2007, and an expiration date of February 2, 2014, is a fraudulently altered document misrepresenting the expiration date; and (c) on January 15, 2013, Nesbitt testified under oath that the purported license, Pls.' Exhibit 3, is the license she held at that time.  Nesbitt neither controverted nor explained the discrepancy between her testimony and purported license and the evidence obtained by the

plaintiffs from the New York Department of State.  Accordingly, the Court finds that Nesbitt, willfully and in bad faith, perpetrated a fraud upon: (i) her adversary, when she testified under oath that she held the license which she knew was fraudulently altered; and (ii) the Court, when she failed to refute or explain the fraudulently altered document and correct or explain her testimony in her opposition to the plaintiffs' motion.  Nesbitt's complete failure to address the issue of fraud in her opposition to the plaintiff's motion for sanctions is particularly troubling, in light of the fact that a party who swears falsely under oath may be sanctioned by the court.  See United States v. Mandujano, 425 U.S. 564, 577, 96 S. Ct. 1768, 1776 (1976) (sanctions are allowed "for false statements or perjury").  The Court finds that the fraud perpetrated by Nesbitt on the plaintiffs and the Court warrants sanctions.

Although the fraud perpetrated by Nesbitt on the plaintiffs and the Court is serious misconduct, the Court finds that granting judgment by default, as requested in the plaintiffs' notice of motion, is not appropriate in the circumstance of this case.  While a judgment by default against Nesbitt only would appear to be a proper sanction for her misconduct, it would have substantial implications on the liability of the other defendants.  However, the factual issues concerning the defendants' knowledge, if any, of the status of Nesbitt's license are not undisputed.  The material issues concerning the remaining defendants' knowledge, if any, of Nesbitt's lack of a license and her fraudulent conduct do not favor granting judgment by default against all the defendants and militate against granting a judgment by default against Nesbitt, as the claims against Nesbitt and the other defendants are closely related.  The Court considered less drastic measures available to sanction the defendants, including those put forward by the plaintiffs.

Nesbitt's conduct was willful and the product of intentional bad faith, which prejudiced the plaintiffs to the extent that they relied on the purported license produced by the defendants, during

discovery, when they examined Nesbitt.  Furthermore, Nesbitt testified falsely, under oath, about issues that are central to the truth-finding process.  In doing so, she misled the plaintiffs and the Court to believe that she was telling the truth.  Thus, precluding Nesbitt's testimony at trial will: (1) deter all parties from engaging in spoliation; (2) place the risk of an erroneous judgment on Nesbitt, who created the risk; and (3) restore the plaintiffs to the position they would have been in absent the wrongful alteration of the evidence by Nesbitt.  The Court finds that precluding Nesbitt's testimony at trial is an appropriate sanction for the misconduct at issue.

***Referral to the United States Attorney's Office***

The Court also considered whether to refer Nesbitt's conduct to the United States Attorney's Office, for investigation and, if appropriate, prosecution for perjury during Nesbitt's deposition.  "No legal system can long remain viable if lying under oath is treated as no more than a social solecism."  United States v. Cornielle, 171 F.3d 748, 753 (2d Cir. 1999).  "Perjured testimony is an obvious and flagrant affront to the basic concepts of judicial proceedings. . . . Congress has made the giving of false answers a criminal act punishable by severe penalties." Mandujano, 425 U.S. at 576, 96 S. Ct. at 1776.

> Whoever under oath ( or in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code) in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration or makes or uses any other information, including any book, paper, document, record, recording, or other material, knowing the same to contain any false material declaration, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1623(a).

Section 1623 applies to statements given at a deposition.  See Dunn v. United States, 442 U.S. 100, 111, 99 S. Ct. 2190, 2196 (1979); see also United States v. Kross, 14 F.3d 751, 754 (2d Cir. 1994) (adopting a broad construction of materiality in the context of a

deposition in a civil matter to include matters subject to Rule 26(b)(1) of the Federal Rules of Civil Procedure).

Nesbitt testified falsely under oath, at her January 15, 2013 deposition, that, at that time, she held a New York esthetician's license, with an effective date of August 2, 2007, and an expiration date of February 2, 2014.  During her deposition, Nesbitt produced to the plaintiffs the falsified New York esthetician's license purporting to be valid from August 2, 2007 to February 2, 2014.  Since the undisputed evidence establishes that Nesbitt's purported license was falsified and her deposition testimony was false, the Court finds that it is appropriate to refer Nesbitt's conduct to the United States Attorney's Office for investigation and, if appropriate, prosecution for perjury.

***Defendants' Motion***

Although the defendants indicate in their notice of motion that they seek partial summary judgment, their motion seeks summary judgment on all claims "on the basis of the release," alleged to have been signed by Ades.[5]  The defendants' Rule 56.1 statement, Docket Entry No. 50, is deficient because it does not comply with Local Civil Rule 56.1 of this court, namely, it does not include numbered paragraphs that correspond to the plaintiffs' Rule 56.1 statement and each statement contained within the defendants' Rule 56.1 statement is not followed by a citation to

---

[5]  Exhibit F, attached to the affirmation of the defendants' attorney in support of the defendants' motion, contains a document entitled "Consent Form," allegedly signed by Ades on May 4, 2011.  In her affidavit, in opposition to the defendants' motion, Ades disputes that she gave informed consent.  Moreover, the "Consent Form," signed on May 4, 2011, is internally inconsistent.  It indicates, in one part, that the relevant procedure was "Laser Hair Removal," while indicating, in another part, that it was "Photo Facial" involving "face," "neck," and "chest."  Similarly, no evidence is submitted by the defendants to demonstrate what relevance, if any, the "Consent Form" Ades signed on May 4, 2011, has to the treatment at issue, performed in November 2011.

admissible evidence.  See Local Civil Rule 56.1.  Moreover, the affirmation of the defendants'

attorney, Docket Entry No. 55, is not a proper vehicle for stating the material facts about which the

defendants contend no genuine issue to be tried exists, see Local Civil Rule 56.1, and most of the

statements made in the affirmation are not made based on personal knowledge,[6] see Fed. R. Civ. P.

56(c)(4); Union Ins. Soc'y of Canton, Ltd. v. William Gluckin & Co., 353 F.2d 946, 952 (2d Cir.

1965) (statements contained in an affirmation "which are not based upon personal knowledge will

not be considered by the court.").  The Court finds that the defendants failed  to comply with Local

Civil Rule 56.1 of this court, and that failure warrants the denial of their summary judgment

motion.  See Local Civil Rule 56.1(a).  Therefore, the defendants did not satisfy their burden of

establishing that no genuine issue as to any material fact exists that would warrant granting their

motion for summary judgment.

**Conclusion**

For the foregoing reasons: (1) the part of the plaintiffs' motion seeking summary judgment,

Docket Entry No. 38, is denied; (2) the part of the plaintiffs' motion seeking sanctions, Docket

Entry No. 38, is granted; (3) the defendants' motion for summary judgment, Docket Entry No. 43,

---

[6] For example, the statements lacking personal knowledge in the affirmation of the defendants' attorney include: "Dr. Fink never maintained any records of who would attend the sessions"; "Plaintiff attended on seven occasions at Laser Cosmetica and on no such occasion was a physician present that she observed"; "the various Laser Cosmetica, LLCs all maintained different staff and different bank accounts" and "plaintiff executed an informed consent form (Exhibit 'F', page 081) on May 4, 2011."

is denied; and (4) Nesbitt's conduct at her deposition is being referred to the United States

Attorney's Office for investigation, as explained above.

Dated:  New York, New York
       June 6, 2013

SO ORDERED:

*Kevin Nathaniel Fox*

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE